Myocare Nursing Home, Inc. et al., Appellees, *v.*
Fifth Third Bank; Coury et al., Appellants.

[Cite as *Myocare Nursing Home, Inc. v. Fifth Third Bank,* 98 Ohio St.3d 545, 2003-Ohio-2287.]

(No. 2001–2033—Submitted January 8, 2003—Decided May 14, 2003.)

Moyer, C.J.

{¶ 1} Six siblings, who are majority shareholders of five corporations engaged in nursing-home and related businesses, initiated this cause of action by filing a complaint both in their individual capacities and on behalf of the corporations of which they are shareholders. The majority shareholders, appellees, named as a defendant the Fifth Third Bank, with which the corporations banked. They also named as defendants another shareholder, their brother, appellant Elias Coury, and their father and the founder of the corporations, appellant Joseph E. Coury.

{¶ 2} Prior to December 1993, all of the stock of three of the corporations was owned by the father, Joseph. Joseph and son Elias owned the stock of the two remaining corporations. After January 23, 1992, Joseph made gifts of all of his stock in the corporations to his eight children,[1] in equal shares.

{¶ 3} Disputes among the shareholders regarding control and direction of the corporation arose, with six siblings coalescing into a majority shareholder group that opposed Elias. Ultimately, the bank received conflicting instructions regarding the financial activities of the corporations. Joseph attempted to negoti-

---

1. The eighth sibling, Joseph M. Coury, is not a party in the case at bar.

ate the differences between his children and engaged an attorney in 1998 to mediate their disagreements. However, those efforts proved unsuccessful.

{¶ 4} In August 1999, Joseph disclosed the existence of five documents purporting to affect the five corporations he had founded, each entitled "Close Corporation Agreement" ("CCA"). Each CCA stated that it was to be governed by R.C. 1701.591. The majority shareholders had not previously been aware of the existence of these five CCAs.

{¶ 5} Each of the documents bore an execution date of January 23, 1992, and purported to have been executed by the corporation and by all shareholders owning stock on that date, i.e., Joseph alone as to three of the corporations and Joseph and Elias as to the remaining two corporations. The CCAs provided that, irrespective of future stock ownership, Joseph would be chairman of the board until death, legal incapacity, resignation, or appointment by him of a successor. They further provided that many typical actions of the corporations, including the purchase of property, approval of annual budgets, borrowing of money, making of contracts, and determination of salaries and bonuses, could be implemented by the officers of the corporation "only after obtaining the approval of the Chairman of The Board or the unanimous approval" of the shareholders. Each CCA expressly provided that in the absence of unanimous consent by the existing shareholders as to these matters, "the Chairman of the Board shall be authorized to act in any manner he deems appropriate and any said action will be final and binding." Each CCA further provided that if any shareholder challenged the validity of the CCA, the corporation had the duty to redeem that shareholder's stock for a price of $100 per share.

{¶ 6} In their complaint, the majority shareholders sought injunctive and declaratory relief regarding the five documents. They asserted that the CCAs had not been executed in conformity with R.C. 1701.591 and should therefore be declared void and unenforceable. They further claimed that the CCAs had not been executed on January 23, 1992, as indicated on the documents themselves, but had instead been signed after the transfer of stock by Joseph to his children and had hence not been executed by "[e]very person who is a shareholder of the corporation at the time of the agreement's adoption" as required by R.C. 1701.591(A)(1).

{¶ 7} Joseph and Elias answered the complaint, and, in a counterclaim, they sought a judgment declaring the CCAs valid and enforceable. They also demanded an award of attorney fees and costs.

{¶ 8} The parties filed cross-motions for summary judgment. The trial court granted the motion of appellants Joseph E. Coury and Elias J. Coury and upheld the validity of the CCAs. The court of appeals reversed, finding that a genuine issue of material fact existed as to the date Joseph and Elias Coury signed the

agreements, thereby precluding summary judgment. The court of appeals found that all other issues raised by the parties in the appeal and in a cross-appeal by Elias and Joseph were moot. It remanded the cause to the trial court. The cause is before this court upon the allowance of a discretionary appeal.

{¶ 9} We hold that summary judgment was properly granted in favor of Joseph and Elias Coury and accordingly reverse the judgment of the court of appeals.

{¶ 10} R.C. 1701.591 authorizes close-corporation agreements to govern the internal affairs of close corporations and the legal relationships of their shareholders at variance with general corporation law that would otherwise apply. R.C. 1701.591 states:

{¶ 11} "(A) In order to qualify as a close corporation agreement under this section, the agreement shall meet the following requirements:

{¶ 12} "(1) Every person who is a shareholder of the corporation at the time of the agreement's adoption, whether or not entitled to vote, shall have assented to the agreement in writing;

{¶ 13} "(2) The agreement shall be set forth in the articles, the regulations, or another written instrument;

{¶ 14} "(3) The agreement shall include a statement that it is to be governed by this section.

{¶ 15} "(B) A close corporation agreement that is not set forth in the articles or the regulations shall be entered in the record of minutes of the proceedings of the shareholders of the corporation * * *.

{¶ 16} "(C) Irrespective of any other provisions of this chapter, but subject to division (D)(2) of this section, a close corporation agreement may contain provisions, which shall be binding on the corporation and all of its shareholders, regulating any aspect of the internal affairs of the corporation or the relations of the shareholders among themselves, including the following:

{¶ 17} "(1) Regulation of the management of the business and affairs of the corporation;

{¶ 18} "* * *

{¶ 19} "(3) * * * [V]oting requirements, including the requirement of the affirmative vote or approval of all shareholders or of all directors, which voting requirements need not appear in the articles unless the close corporation agreement is set forth in the articles;

{¶ 20} "* * *

{¶ 21} "(8) * * * [D]elegation to one or more shareholders or other persons of all or part of the authority of the directors;

{¶ 22} "* * *

{¶ 23} "(F) No close corporation agreement is invalid among the parties or in respect of the corporation on any of the following grounds:

{¶ 24} "* * *

{¶ 25} "(4) The agreement has not been filed with the minutes as required by division (B) of this section.

{¶ 26} "* * *

{¶ 27} "(H) The existence of a close corporation agreement shall be noted conspicuously on the face or the back of every certificate for shares of the corporation and a purchaser or transferee of shares represented by a certificate on which such a notation so appears shall be conclusively considered to have taken delivery with notice of the close corporation agreement. Any transferee of shares by gift, bequest, or inheritance and any purchaser or transferee of shares with knowledge or notice of a close corporation agreement is bound by the agreement and shall be considered to be a party to the agreement.

{¶ 28} "(I)(1) A close corporation agreement becomes invalid under any of the following circumstances:

{¶ 29} "* * *

{¶ 30} "(d) Shares of the corporation are transferred or issued to a person who takes delivery of the certificate for the shares other than by gift, bequest, or inheritance and without knowledge or notice of the close corporation agreement [and the person does not consent to the agreement]."[2]

{¶ 31} The court of appeals correctly observed that the date on which the CCAs were signed is a critical factor: if the CCAs were signed after the father gave away some or all of his stock to his other children, the CCAs are not valid, because they were not assented to by every shareholder as prescribed by R.C. 1701.591(A).

{¶ 32} The court of appeals observed that the CCAs had not been disclosed to all of the shareholders or even to the father's accountant, that they had not been mentioned in the corporations' articles, regulations or minutes, and that the existence of the CCAs had not been noted on the stock certificates themselves, as required by R.C. 1701.591(A), (B), and (H). It found that this evidence precluded

---

2. Although the statute was substantially rewritten in 1993, the quoted language is virtually identical in the current and prior versions. 1986 Sub.H.B.No. 428, 141 Ohio Laws, Part II, 3817. The bracketed phrase at the end of the quotation summarizes a condition of the prior, applicable version. In the current version, the condition is that the transferee reject the agreement within a specified time.

summary judgment because it demonstrated a genuine issue as to a material fact, i.e., the date the CCAs were signed.

{¶ 33} Summary judgment may not be granted if there is any genuine issue of material fact. Civ.R. 56(C). However, in determining whether a genuine issue exists as to a material fact, a court of appeals must determine whether the evidence presented a "sufficient disagreement to require submission to a jury' or [is] 'so one-sided that one party must prevail as a matter of law.'" *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." Id., 477 U.S. at 254, 106 S.Ct. 2505, 91 L.Ed.2d 202. Accordingly, in determining whether a triable issue of fact exists so as to preclude summary judgment, a court should determine whether a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial. Only then does a *genuine* issue of material fact precluding summary judgment exist.

{¶ 34} The majority shareholders did not produce evidence sufficient to demonstrate that the date of execution of the CCAs was in genuine dispute. The court of appeals correctly recognized that the date of execution of the CCAs is a material fact. However, the court of appeals erred in failing to recognize and give full effect to the long-recognized presumption that a contract or other written instrument that is regular on its face and that contains no indications of erasure or falsity is correctly dated. *Hammond v. Ocean Shore Dev.* (1913), 22 Cal.App. 167, 170, 133 P. 978; see, also, *Ratcliff v. Dick Johnson School Twp.* (1933), 204 Ind. 525, 185 N.E. 143; *J.R. Watkins Co. v. Pace* (1924), 212 Ala. 63, 101 So. 758. Moreover, Joseph and Elias presented their testimony, along with that of Joseph's attorney, that they signed the CCAs on the date indicated on the documents.

{¶ 35} It is true that this presumption is rebuttable. However, where a rebuttable presumption exists, a party challenging the presumed fact must produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. Only upon the production of sufficient rebutting evidence does the presumption disappear. *Carson v. Metro. Life Ins. Co.* (1951), 156 Ohio St. 104, 108, 45 O.O. 103, 100 N.E.2d 197.

{¶ 36} No reasonable jury could find the evidence presented by the majority shareholders sufficient to counter the evidence that the January 23, 1992 date shown on the CCAs was the true date the instruments were created. Nondisclo-

sure of the CCAs does not prove or disprove that date, particularly in that failure to disclose the existence of a CCA to shareholders who receive their interest *by gift,* as in the case at bar, does not invalidate the agreement. R.C. 1701.591(H) (although the existence of a close-corporation agreement is to be noted on every share certificate, "[a]ny transferee of shares by gift * * * is bound by the agreement and shall be considered to be a party to the agreement"). See, also, R.C. 1701.591(I)(d) (a close-corporation agreement becomes invalid under some circumstances upon the transfer or issuance of shares of the corporation "to a person who takes delivery of the certificate for the shares *other than by gift* * * * and without knowledge or notice of the close corporation agreement" [emphasis added] ).

{¶ 37}   The majority shareholders also assert that the date of the execution of the CCAs is in genuine dispute based on testimony that Joseph and Elias had been deceitful generally in their personal and private lives and had acted after January 23, 1992, in a manner inconsistent with recognition of the existence of the CCAs. However, this evidence does not contradict the representation on the CCAs themselves that they were executed on January 23, 1992. As cogently described by the appellants, this evidence reflects little more than unfounded suspicion and personal vendetta, rising only to the level of speculation and innuendo. In short, the majority shareholders did not present evidence sufficient to countervail the presumption that the CCAs were in fact executed on January 23, 1992, the date indicated on the CCAs themselves.

{¶ 38}   The court of appeals deemed moot several remaining reasons urged by the majority shareholders for declaring the CCAs invalid. We choose to exercise our authority to address those issues de novo. *Univ. Hosp. of Cleveland, Inc. v. Lynch,* 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, ¶ 52.

{¶ 39}   R.C. 1701.591(A)(2) provides that in order "to qualify as a close corporation agreement * * * [t]he agreement shall be set forth in the articles, the regulations, or another written instrument." In addition, R.C. 1701.591(B) provides, "A close corporation agreement that is not set forth in the articles or the regulations shall be entered in the record of minutes of the proceedings of the shareholders of the corporation * * *." It is undisputed that no CCA was incorporated into or referred to by the articles or regulations of any of the five Coury corporate entities or entered into the minutes. The majority shareholders contend that the CCAs are therefore invalid.

{¶ 40}   However, R.C. 1701.591(F)(4) provides that a close-corporation agreement is not invalid between the parties or in respect of the corporation on the grounds that the agreement was not filed with the minutes as required by R.C. 1701.591(B). The question thus remains whether the CCAs were set forth in "the

articles, the regulations, *or another written instrument."* (Emphasis added.) R.C. 1701.591(A)(2).

{¶ 41} The majority shareholders contend that the CCAs do not comply with R.C. 1701.591(A)(2), in that this provision requires a written instrument *akin* to articles of incorporation or regulations of a corporation, which are never secret and are subject to inspection by any shareholder at any time. They argue that R.C. 1701.591(A)(2) therefore requires a CCA to be set forth in a writing available for inspection by anyone who becomes a shareholder after execution of the CCA.

{¶ 42} We reject the majority shareholders' interpretation of R.C. 1701.591(A)(2). First, as previously discussed, R.C. 1701.591 read in its entirety does not require disclosure to shareholders who obtained their shares by gift. R.C. 1701.591(H). Moreover, R.C. 1701.591(I) repeatedly distinguishes between such shareholders and others, providing more comprehensive protection to shareholders who do not obtain their shares by gift, bequest, or inheritance. R.C. 1701.591(I)(2)(a) and (3).

{¶ 43} Second, R.C. 1701.591(A)(2) bars *oral* close-corporation agreements. The statute simply requires that the agreement be written. The written agreement may be incorporated into the articles or regulations *or* a separate written contract, as is the case here. Had the General Assembly intended to require disclosure to persons who become shareholders by gift, it would have done so expressly rather than by the indirect means suggested by the majority shareholders.

{¶ 44} The majority shareholders further contend that their father, Joseph, was bound by the fiduciary duties set forth in R.C. 1701.59(B) and (E) and that those duties required disclosure of the CCAs. However, that argument is not consistent with R.C. 1701.591 when viewed in its entirety. As noted previously, division (H) of that statute provides that a party holding shares as a result of a gift is bound by a CCA and is deemed a party to it, even where no notation of the existence of the CCA appears on the certificate.

{¶ 45} We hold that a close-corporation agreement pursuant to R.C. 1701.591 is not invalidated by failure to disclose existence of the agreement to a shareholder who obtained his or her shares by gift made after execution of the agreement.

{¶ 46} Finally, the majority shareholders contend that even if the trial court correctly upheld the validity of the CCAs, the cause should nevertheless be remanded for consideration of their additional claims, not determined by the trial court, for reformation and estoppel.

{¶ 47} In the court of appeals, Elias and Joseph filed a cross-appeal, asserting that no issues remained for determination after the trial court granted their

motion for summary judgment declaring that the agreements were valid and enforceable and after they voluntarily dismissed their remaining counterclaim for attorney fees. They claimed that those two actions rendered the trial court's judgment complete rather than partial.

{¶ 48} Although the court of appeals did not reach the merits of this cross-appeal, we exercise our authority to finally resolve this cause. We agree with the analysis of the unique procedural facts of this case as set forth by Elias and Joseph in their cross-appeal in the court of appeals. We therefore reverse the judgment of the court of appeals and remand the cause with instructions that final judgment be entered for Elias.[3]

Judgment reversed
and cause remanded.

F.E. Sweeney, Pfeifer, Brogan, Lundberg Stratton and O'Connor, JJ., concur.

Gwin, J., dissents and would affirm the judgment of the court of appeals.

W. Scott Gwin, J., of the Fifth Appellate District, sitting for Resnick, J.

James A. Brogan, J., of the Second Appellate District, sitting for Cook, J.

---

Kohrman, Jackson & Krantz, P.L.L., Jonathon M. Yarger, Valoria C. Hoover and Bonnie S. Finley; Mark I. Wallach and Leah Pappas, for appellees.

Arter & Hadden, L.L.P., Irene C. Keyse–Walker, Hugh M. Stanley Jr. and Edward E. Taber, for appellants.

---

3. Joseph died during the pendency of this appeal.