[Cite as *Kozel v. Andrews*, 2013-Ohio-3887.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

MARK D. KOZEL,
AS CHAPTER 7 TRUSTEE
FOR TWIN CITY HOSPITAL

        Plaintiff-Appellant

-vs-

GREGG ANDREWS, ET AL.

        Defendants-Appellees

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Patricia A. Delaney, J.

Case No. 2012 AP 11 0066

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2012 CT 05 0474 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | September 5, 2013 |

APPEARANCES:

For Defendants-Appellees

DAVID L. DINGWELL
EDMOND J. MACK
LEE E. PLAKAS
JOSHUA E. O'FARRELL
Tzangas, Plakas, Mannos, LTD
220 Market Avenue South
Eighth Floor
Canton, Ohio 44702

For Plaintiff-Appellant

JONATHON M. YARGER
VICTOR D. RADEL
ANDREW J. YARGER
Yarger, Radel & Pentz, LLC
1111 Superior Avenue, Suite 530
Cleveland, Ohio 44114

*Hoffman, J.*

{¶1}   Plaintiff-appellant Mark D. Kozel, as Chapter 7 Trustee for Twin City Hospital, appeals the October 12, 2012 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees Gregg Andrews, et al.

STATEMENT OF THE CASE AND FACTS

{¶2}   Twin City Hospital (hereinafter "Twin City") is a small rural acute care hospital located in Dennison, Tuscarawas County, Ohio.  Twin City has served the community for over one hundred years.

{¶3}   On October 13, 2010, Twin City filed Chapter 11 Bankruptcy.  The creditors of Twin City duly elected Appellant as Trustee, replacing the originally appointed Trustee. The proceeding under Chapter 11 was subsequently converted to a Chapter 7 proceeding.

{¶4}   On January 23, 2012, Appellant filed a complaint in the U.S. Bankruptcy Court for the Northern District of Ohio, Eastern Division, against Appellees Carol Hoffman, Marge Jentes, Darrell Pancher, John Rypien, Bill Surber, Jim Weaver, Dr. Gregg Andrews, Fred Bollon, Greg DiDonato, Tim McKnight, Rod Rafael, and Doug Ross as defendants. Appellees are the former Board Members of Twin City. Appellant asserted Appellees acted improperly by issuing approximately $17.3 million in tax exempt revenue bonds to fund new construction and renovations to Twin City and to refinance the hospital's outstanding long term obligations while its finances were in poor condition. On March 12, 2012, Appellees filed their motion for abstention, asking the bankruptcy court to exercise its permissive authority to abstain from hearing the

adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1), and allow the matter to be heard by the Tuscarawas County Court of Common Pleas. The bankruptcy court granted Appellees' motion and ordered the case be filed in the Tuscarawas County Court of Common Pleas.

{¶5} Appellant filed the instant action on May 22, 2012. A visiting judge was assigned to the case. Appellees filed a Civ. R. 12(B)(6) motion to dismiss. Appellant filed a brief in opposition thereto. Via Order of the Court filed August 15, 2012, the trial court found the parties' motions presented matters outside the complaint and ordered the motion to dismiss be treated as a motion for summary judgment, and permitted the parties to file supplemental briefs and supporting evidence.

{¶6} The evidence presented in support of and in opposition to summary judgment revealed the following. Effective January 1, 2001, Twin City received full accreditation from the Center for Medicare and Medicaid Services for a critical access hospital designation. Such designation allowed Twin City to receive reasonable, cost-based reimbursement for both inpatient and outpatient services provided to Medicare beneficiaries, thereby affecting Twin City's revenue.

{¶7} The Joint Commission on the Accreditation of Healthcare Organizations ("JCAHO"), a peer review organization, conducted independent reviews of hospitals to assess the appropriateness of the admission of Medicare program beneficiaries. In July, 2004, JCAHO conducted an inspection of Twin City after which the organization mandated Twin City upgrade its emergency room or lose its accreditation. JCAHO required Twin City to have construction of the new emergency room underway by the next inspection, which was to be conducted in late 2006. JCAHO's mandate was the

result of a number of concerns including the fact stronger standards required better patient flow, increased privacy, and less overcrowding; the outdated infrastructure could not support new technologies; space constraints limited the emergency room's capabilities; and emergency room visits had reached capacity.

{¶8} The limitations of and the need to replace the emergency room were discussed at Board Meetings. Twin City physicians advised Appellees improvements to the emergency room would increase visits, admissions, and the use of outpatient services.  Twin City physicians saw the emergency room as "the greatest obstacle to the success of Twin City Hospital".  As a result, Appellees retained Alberici Constructors, Inc. of St. Louis, Missouri, in April, 2005, to create drawings for the emergency room capital improvement project.  Appellees also retained Carnegie Consulting, Inc. of Akron, Ohio, to facilitate the creation of a comprehensive financial feasibility study and implementation plan to determine the viability of the project.  In July, 2005, the cost of the emergency room capital improvement project was estimated at $10 million.  Carnegie investigated possible lenders.  Appellees evaluated a variety of fundraising and grant opportunities.  Carnegie advised Appellees the "[a]verage trend is a 20% increase in volumes after opening new construction."

{¶9} In 2005, Twin City had a net operating income of $24,870.  However, in 2006, the operating income fell to negative $407,216.  The operating income loss continued in 2007, at negative $795,000; in 2008, at negative $895,000; and in 2009, at negative $2,146,000.

{¶10} Appellees began the fundraising efforts and by January, 2006, $2.8 million in donations had been pledged to Twin City.  In addition, the City Councils of

Uhrichsville and Dennison approved a resolution to place a property tax levy which would generate $1.5 million over a ten year period. The levy passed by a two to one margin.

{¶11} At a Special Board Meeting held November 14, 2005, Appellees received a "Rural Hospital Replacement Study" which outlined the impact of new construction on the operations and bottom lines of critical access hospitals. The Study highlighted four main points:

- Rural communities which built new critical access hospitals experienced increased market share and local usage of services;

- Rural communities which built new critical access hospitals reported enhanced clinical performance, improved workforce recruitment and retention, and improved quality performance efforts overall;

- New rural critical access hospitals experienced volume, efficiency, and profitability gains in excess of industry averages; and

- While growth could not be attributed solely to the new facility, the results of the 20 rural critical access hospitals which built new facilities were "nearly universally positive."

{¶12} Appellees retained the certified public accounting firm of Arnett & Foster PLLC to provide projected balance sheets, statements of operations, and other analyses to facilitate the completion of the financial feasibility study for the emergency room capital improvement project.

{¶13} Appellees contemplated expanding the scope of the emergency room capital improvement project to include improvement to the second floor of the facility.

Carnegie advised Appellees, "From a financial standpoint, the project looks favorable with no different risk level with completion of the second floor." Thereafter, in August, 2006, Carnegie provided Appellees with a business plan for Twin City which was based upon Appellees' projection of a 6% growth in revenue in 2006. In actuality, Twin City only experienced a 2% growth in revenue in 2006. The business plan set forth a comprehensive description of the revised capital improvement project, which was projected to cost over $21 million.

{¶14} In Janurary 2007, Appellees were advised all of the compliance information had been submitted to JCAHO, and Twin City was no longer in danger of losing its Medicare/Medicaid accreditation. Nonetheless, Appellees researched financing options, and retained the law firm of Peck, Shaffer and Williams, LLP, to act as bond counsel. Upon review of the financing options, Appellees decided to utilize the financial advising services of Fifth Third Securities with potential financing to be underwritten by B.C. Ziegler and Co. On April 25, 2007, Appellees entered into a resolution which set forth Appellees' approval of Twin City's intent to finance the cost of the project through "the consummation of a tax-exempt financing transaction * * * subject to the [acceptance of the] final Feasibility Study" prepared by Arnett & Foster, "showing [Twin City] will be able to service the necessary debt". Arnett & Foster presented a tentative draft of the Feasibility Study to Appellees on or about June 21, 2007. Arnett & Foster concluded:

> The accompanying financial projection indicates sufficient funds could be generated to meet [Twin City'] operating expense, working capital needs, and other financial requirements including the debt service

requirements associated with the $16.9 million bond issuance during the projection periods. However, the achievement of any financial projection is dependent upon future events, the occurrence of which cannot be assured.

{¶15} In a letter to Appellees, Arnett & Foster identified "Significant deficiencies" in Twin City's internal control. Arnet & Foster explained a significant deficiency is:

a control deficiency, or combination of control deficiencies, that adversely affects the entity's ability to initiate, authorize, record, process, or report financial data reliably in accordance with generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's financial statements that is more than inconsequential will not be prevented or detected.

{¶16} Sometime during 2007, Twin City was forced to fire its CFO. Appelllees met with Peck, Shaffer and Williams, bond counsel, to review all of the documents associated with the emergency room capital improvement project. Peck, Shaffer and Williams informed Appellees, "The feasibility study does show that we should be able to meet the debt service ratio." On August 1, 2007, Appellees approved a "resolution to proceed with bond transaction as means of providing financing for the building project." At the August 1st meeting, Appellees were advised Twin City had suffered an operating loss of $407,216 in 2006.

{¶17} On August 8, 2007, Arnett & Foster completed the final financial feasibility study, which was identical to the tentative draft in all respects except for the amount of the bond issuance. The evidence indicates Appellees never read the feasibility study

despite conditioning approval of the bond on a positive feasibility study. The amount of the bond issuance increased from $16.9 million to $17.3 million. Appellees finalized the bond transaction. Ultimately, tax exempt revenue bonds in the amount of $16,775,000 were issued to finance the Twin City emergency room capital improvement project. Appellees postponed approval of the financial statements, which would have shown the incorrect projections, until after the bond transaction was approved and underway.

{¶18} Construction of the emergency room capital improvement project was completed in the spring of 2009. During 2009, Twin City began to experience a dramatic change in payor mix, seeing a significant increase in Medicaid and self-pay patients. As a result, by mid-2010, Twin City was writing off 61% of charges which included Medicaid and charity care. Twin City filed Chapter 11 bankruptcy in October 2010. Twin City's assets including the physical building were sold through the bankruptcy court to Trinity Hospital Twin City in May, 2011. Trinity Hospital Twin City operates as part of the ministry of Sylvania Franciscan Health which is operated by the Sisters of St. Francis of Sylvania, Ohio.

{¶19} Via Judgment Entry filed October 12, 2012, the trial court granted summary judgment in favor of Appellees. The trial court found Appellant had failed to establish by clear and convincing evidence any Appellee "was conscious that Board approval of the bond transaction would, in all probability, result in the failure of Twin City Hospital." October 12, 2012 Judgment Entry at p.5.

{¶20} It is from this judgment entry Appellant appeals, raising the following assignments of error:

**{¶21}** "I. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶22}** "II. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶23}** "III. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶24}** "IV. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶25}** "V. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT."

STANDARD OF REVIEW

**{¶26}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶27}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

**{¶28}** It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The standard for granting summary judgment is delineated in *Dresher v. Burt,* 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ,* 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

I

{¶29} In his first assignment of error, Appellant contends the trial court erred in granting summary judgment in favor of Appellees as the trial court applied the incorrect standard of care.

{¶30} R.C. Chapter 1702.01 et seq. set forth Ohio's non-profit corporation law. R.C. 1702.30 specifically outlines fiduciary duties which apply to boards of directors of non-profit corporations, and provides, in pertinent part:

> (E) * * * a director is liable in damages for any act that the director takes or fails to take as director only if it is proved, by clear and convincing evidence, in a court with jurisdiction that the act or omission of the director was one undertaken with a deliberate intent to cause injury to the corporation or was one undertaken with a reckless disregard for the best interests of the corporation.

{¶31} The trial court found "'recklessness' as used in R.C. 1702.30 means a perverse disregard of a known risk. It necessarily requires something more than mere negligence. The actor must be conscious that his/her conduct will, in all probability, result in injury." The trial court concluded, Appellant "may not succeed on any of his claims * * * because his Civ. R. 56 material does not create, by clear and convincing evidence, a genuine issue of fact that any [Appellant] was conscious that Board approval of the bond transaction, in all probability, [would] result in the failure of Twin City Hospital."

{¶32} Appellant submits the trial court held him to a "willful" standard of care, thereby requiring a higher threshold showing to overcome summary judgment. We agree.

{¶33} In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, the Ohio Supreme Court held "'willful,' 'wanton,' and 'reckless' describe different and distinct degrees of care and are not interchangeable." *Id.* at para. 1 of syllabus. The *Anderson* Court explained:

Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Tighe v. Diamond,* 149 Ohio St. at 527, 80 N.E.2d 122; *see also Black's Law Dictionary* 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty). * * *

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson,* 53 Ohio St.3d at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk,* but the actor does not desire harm). *Id.* at para. 32 and 34.

**{¶34}** In the instant action, the trial court 's definition of "reckless" was incorrect. We recognize the trial court did not have the benefit of the *Anderson* decision at the time of its ruling, however, "when case law controlling disposition of a pending appeal changes during the pendancy of the appeal, the reviewing court should apply the new law to the pending appeal." *Vujovic v. Vujovic*, Medina App. No. 04CA0083-M, 2005 - Ohio- 3942 at 14. Accordingly, we reverse the decision of the trial court granting summary judgment in favor of Appellees and remand the matter with instructions the trial court redetermine the motion for summary judgment applying the definition of "reckless" as set forth in *Anderson*.

**{¶35}** Appellant's first assignment of error is sustained.

II, III, IV, V

**{¶36}** In light of our disposition of Appellant's first assignment of error, we find Appellant's remaining assignments of error to be premature.

**{¶37}** The judgment of the Tuscarawas County Court of Common Pleas is reversed and the matter remanded with instructions to the trial court to redetermine the motion for summary judgment applying the definition of "reckless" as set forth in *Anderson*.

By: Hoffman, J.

Gwin, P.J. and

Delaney, J. concur

_____

HON. WILLIAM B. HOFFMAN

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


MARK D. KOZEL,                          :
AS CHAPTER 7 TRUSTEE                    :
FOR TWIN CITY HOSPITAL                  :
                                        :
    Plaintiff-Appellant                 :
                                        :
-vs-                                    :          JUDGMENT ENTRY
                                        :
GREGG ANDREWS, ET AL.                   :
                                        :
    Defendants-Appellees                :          Case No. 2012 AP 11 0066


For the reasons stated in our accompanying Opinion, the judgment of the Tuscarawas County Court of Common Pleas is reversed and the matter remanded for further proceedings in accordance with our Opinion and the law. Costs to Appellees.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY