[Cite as *Kozel v. Andrews*, 2014-Ohio-4793.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARK D. KOZEL, AS CHAPTER 7 TRUSTEE FOR TWIN CITY HOSPITAL | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | Case No. 2013 AP 12 0049 |
| GREGG ANDREWS, et al. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No  2012 CT 05 0474


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      October 28, 2014


APPEARANCES:

For Plaintiff-Appellant            For Defendants-Appellees

JONATHON M. YARGER                 LEE E. PLAKAS
VICTOR D. RADEL                    JOSHUA E. O'FARRELL
ANDREW J. YARGER                   DAVID L. DINGWELL
YARGER RADEL & PENTZ               EDMOND J. MACK
1111 Superior Avenue               TZANGAS, PLAKAS & MANNOS
Suite 530                          220 Market Avenue South, 8th Floor
Cleveland, Ohio  44114             Canton, Ohio  44702

*Wise, J.*

{¶1}   Plaintiff-appellant Mark D. Kozel, as Chapter 7 Trustee for Twin City Hospital, appeals the November 15, 2013, Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which granted summary judgment in favor of Defendants-appellees Gregg Andrews, et al.

## STATEMENT OF THE CASE AND FACTS

{¶2}   The following facts and procedural history were taken from Appellant's last appeal with this Court, *Kozel v. Andrews*, Tuscarawas App. No. 2012 AP 11 0066, 2013-Ohio-3887.

{¶3}   Twin City Hospital (hereinafter "Twin City") is a small rural acute care hospital located in Dennison, Tuscarawas County, Ohio. Twin City has served the community for over one hundred years.

{¶4}   On October 13, 2010, Twin City filed Chapter 11 Bankruptcy. The creditors of Twin City duly elected Appellant as Trustee, replacing the originally appointed Trustee. The proceeding under Chapter 11 was subsequently converted to a Chapter 7 proceeding.

{¶5}   On January 23, 2012, Appellant filed a complaint in the U.S. Bankruptcy Court for the Northern District of Ohio, Eastern Division, against Appellees Carol Hoffman, Marge Jentes, Darrell Pancher, John Rypien, Bill Surber, Jim Weaver, Dr. Gregg Andrews, Fred Bollon, Greg DiDonato, Tim McKnight, Rod Rafael, and Doug Ross as defendants. Appellees are the former Board Members of Twin City. Appellant asserted Appellees acted improperly by issuing approximately $17.3 million in tax exempt revenue bonds to fund new construction and renovations to Twin City and to

refinance the hospital's outstanding long-term obligations while its finances were in poor condition. On March 12, 2012, Appellees filed their motion for abstention, asking the bankruptcy court to exercise its permissive authority to abstain from hearing the adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1), and allow the matter to be heard by the Tuscarawas County Court of Common Pleas. The bankruptcy court granted Appellees' motion and ordered the case be filed in the Tuscarawas County Court of Common Pleas.

{¶6} Appellant filed the instant action on May 22, 2012. A visiting judge was assigned to the case. Appellees filed a Civ.R. 12(B)(6) motion to dismiss. Appellant filed a brief in opposition thereto. Via Order of the Court filed August 15, 2012, the trial court found the parties' motions presented matters outside the complaint and ordered the motion to dismiss be treated as a motion for summary judgment, and permitted the parties to file supplemental briefs and supporting evidence.

{¶7} The evidence presented in support of and in opposition to summary judgment revealed the following. Effective January 1, 2001, Twin City received full accreditation from the Center for Medicare and Medicaid Services for a critical access hospital designation. Such designation allowed Twin City to receive reasonable, cost-based reimbursement for both inpatient and outpatient services provided to Medicare beneficiaries, thereby affecting Twin City's revenue.

{¶8} The Joint Commission on the Accreditation of Healthcare Organizations ("JCAHO"), a peer review organization, conducted independent reviews of hospitals to assess the appropriateness of the admission of Medicare program beneficiaries. In July, 2004, JCAHO conducted an inspection of Twin City, after which the organization

mandated Twin City upgrade its emergency room or lose its accreditation. JCAHO required Twin City to have construction of the new emergency room underway by the next inspection, which was to be conducted in late 2006. JCAHO's mandate was the result of a number of concerns, including the fact stronger standards required better patient flow, increased privacy, and less overcrowding; the outdated infrastructure could not support new technologies; space constraints limited the emergency room's capabilities; and emergency room visits had reached capacity.

{¶9} The limitations of and the need to replace the emergency room were discussed at Board Meetings. Twin City physicians advised Appellees improvements to the emergency room would increase visits, admissions, and the use of outpatient services. Twin City physicians saw the emergency room as "the greatest obstacle to the success of Twin City Hospital". As a result, Appellees retained Alberici Constructors, Inc. of St. Louis, Missouri, in April, 2005, to create drawings for the emergency room capital improvement project. Appellees also retained Carnegie Consulting, Inc. of Akron, Ohio, to facilitate the creation of a comprehensive financial feasibility study and implementation plan to determine the viability of the project. In July, 2005, the cost of the emergency room capital improvement project was estimated at $10 million. Carnegie investigated possible lenders. Appellees evaluated a variety of fundraising and grant opportunities. Carnegie advised Appellees the "[a]verage trend is a 20% increase in volumes after opening new construction."

{¶10} In 2005, Twin City had a net operating income of $24,870. However, in 2006, the operating income fell to negative $407,216. The operating income loss

continued in 2007, at negative $795,000; in 2008, at negative $895,000; and in 2009, at negative $2,146,000.

{¶11}  Appellees began the fundraising efforts and by January, 2006, $2.8 million in donations had been pledged to Twin City. In addition, the City Councils of Uhrichsville and Dennison approved a resolution to place a property tax levy which would generate $1.5 million over a ten-year period. The levy passed by a two-to-one margin.

{¶12}  At a Special Board Meeting held November 14, 2005, Appellees received a "Rural Hospital Replacement Study" which outlined the impact of new construction on the operations and bottom lines of critical access hospitals. The Study highlighted four main points:

- Rural communities which built new critical access hospitals experienced increased market share and local usage of services;
- Rural communities which built new critical access hospitals reported enhanced clinical performance, improved workforce recruitment and retention, and improved quality performance efforts overall;
- New rural critical access hospitals experienced volume, efficiency, and profitability gains in excess of industry averages; and
- While growth could not be attributed solely to the new facility, the results of the 20 rural critical access hospitals which built new facilities were "nearly universally positive."

{¶13}  Appellees retained the certified public accounting firm of Arnett & Foster PLLC to provide projected balance sheets, statements of operations, and other

analyses to facilitate the completion of the financial feasibility study for the emergency room capital improvement project.

{¶14} Appellees contemplated expanding the scope of the emergency room capital improvement project to include improvement to the second floor of the facility. Carnegie advised Appellees, "From a financial standpoint, the project looks favorable with no different risk level with completion of the second floor." Thereafter, in August, 2006, Carnegie provided Appellees with a business plan for Twin City which was based upon Appellees' projection of a 6% growth in revenue in 2006. In actuality, Twin City only experienced a 2% growth in revenue in 2006. The business plan set forth a comprehensive description of the revised capital improvement project, which was projected to cost over $21 million.

{¶15} In January 2007, Appellees were advised all of the compliance information had been submitted to JCAHO, and Twin City was no longer in danger of losing its Medicare/Medicaid accreditation. Nonetheless, Appellees researched financing options, and retained the law firm of Peck, Shaffer and Williams, LLP, to act as bond counsel. Upon review of the financing options, Appellees decided to utilize the financial advising services of Fifth Third Securities with potential financing to be underwritten by B.C. Ziegler and Co. On April 25, 2007, Appellees entered into a resolution which set forth Appellees' approval of Twin City's intent to finance the cost of the project through "the consummation of a tax-exempt financing transaction * * * subject to the [acceptance of the] final Feasibility Study" prepared by Arnett & Foster, "showing [Twin City] will be able to service the necessary debt". Arnett & Foster presented a tentative draft of the Feasibility Study to Appellees on or about June 21, 2007. Arnett & Foster concluded:

The accompanying financial projection indicates sufficient funds could be generated to meet [Twin City'] operating expense, working capital needs, and other financial requirements including the debt service requirements associated with the $16.9 million bond issuance during the projection periods. However, the achievement of any financial projection is dependent upon future events, the occurrence of which cannot be assured.

{¶16} In a letter to Appellees, Arnett & Foster identified "Significant deficiencies" in Twin City's internal control. Arnett & Foster explained a significant deficiency is:

a control deficiency, or combination of control deficiencies, that adversely affects the entity's ability to initiate, authorize, record, process, or report financial data reliably in accordance with generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's financial statements that is more than inconsequential will not be prevented or detected.

{¶17} Sometime during 2007, Twin City was forced to fire its CFO. Appellees met with Peck, Shaffer and Williams, bond counsel, to review all of the documents associated with the emergency room capital improvement project. Peck, Shaffer and Williams informed Appellees, "The feasibility study does show that we should be able to meet the debt service ratio." On August 1, 2007, Appellees approved a "resolution to proceed with bond transaction as means of providing financing for the building project." At the August 1st meeting, Appellees were advised Twin City had suffered an operating loss of $407,216 in 2006.

**{¶18}** On August 8, 2007, Arnett & Foster completed the final financial feasibility study, which was identical to the tentative draft in all respects except for the amount of the bond issuance. The evidence indicates Appellees never read the feasibility study despite conditioning approval of the bond on a positive feasibility study. The amount of the bond issuance increased from $16.9 million to $17.3 million. Appellees finalized the bond transaction. Ultimately, tax exempt revenue bonds in the amount of $16,775,000 were issued to finance the Twin City emergency room capital improvement project. Appellees postponed approval of the financial statements, which would have shown the incorrect projections, until after the bond transaction was approved and underway.

**{¶19}** Construction of the emergency room capital improvement project was completed in the spring of 2009. During 2009, Twin City began to experience a dramatic change in payor mix, seeing a significant increase in Medicaid and self-pay patients. As a result, by mid–2010, Twin City was writing off 61% of charges which included Medicaid and charity care. Twin City filed Chapter 11 bankruptcy in October 2010. Twin City's assets including the physical building were sold through the bankruptcy court to Trinity Hospital Twin City in May, 2011. Trinity Hospital Twin City operates as part of the ministry of Sylvania Franciscan Health, which is operated by the Sisters of St. Francis of Sylvania, Ohio.

**{¶20}** Via Judgment Entry filed October 12, 2012, the trial court granted summary judgment in favor of Appellees. The trial court found Appellant had failed to establish by clear and convincing evidence any Appellees were "conscious that Board approval of the bond transaction would, in all probability, result in the failure of Twin City Hospital." October 12, 2012 Judgment Entry at p. 5. Appellant filed an appeal with this

Court. We reversed the trial court's decision and issued a remand with instructions to the trial court to re-determine the motion for summary judgment applying the definition of "reckless" as set forth in *Anderson v. Massillon,* 134 Ohio St.3d 380, 983 N.E.2d 266, 2012–Ohio–5711. *See*, *Kozel v. Andrews*, *supra*.

**{¶21}** Upon remand, Appellees filed a supplemental motion for summary judgment. Appellant filed a brief in opposition which included evidence and an affidavit from an expert witness. Appellees filed a motion to strike, which Appellant opposed. Appellant requested the trial court postpone ruling on the summary judgment pursuant to Civ.R. 56(F), in order for Appellant to conduct discovery.

**{¶22}** Via Judgment Entry filed November 15, 2013, the trial court granted summary judgment in favor of Appellees.

**{¶23}** It is from this judgment entry Appellant appeals, raising the following Assignments of Error:

**ASSIGNMENTS OF ERROR**

**{¶24}** "I. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS–APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶25}** "II. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS–APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶26}** "III. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS–APPELLEES' MOTION FOR SUMMARY JUDGMENT.

**{¶27}** "IV. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS–APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶28} "V. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS–APPELLEES' MOTION FOR SUMMARY JUDGMENT."

### STANDARD OF REVIEW

{¶29} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987)*,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996)*,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶30} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977)*,* 50 Ohio St.2d 317, 364 N.E.2d 267.

{¶31} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986)*,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265. The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996)*,* 75 Ohio St.3d 280 at 293, 662 N.E.2d 264: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s)

of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 309 N.E.2d 924.

**I., II., III., IV. and V**

{¶32} In each of his Assignments of Error, Appellant contends the trial court erred in granting summary judgment in favor of Appellees. We shall address Appellant's assignments of error together for ease of discussion as we find them to be interrelated.

{¶33} In its November 15, 2013 Judgment Entry, the trial court found:

{¶34} "If this case were tried, [Appellant] would have to prove, by clear and convincing evidence, that [Appellees] (in their capacity as directors) acted against the best interests of Twin City with a conscious disregard of or indifference to a known or obvious risk of harm to Twin City that was unreasonable under the circumstances and was substantially greater than negligent conduct, i.e., that it was conduct characterized

by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor did not desire harm."

**{¶35}** The trial court defined "clear and convincing evidence", and concluded:

**{¶36}** "[Appellees] have met their burden of production. However, [Appellant] has failed to establish a genuine issue of material fact in response. In light of the burden of proof and the definition of "reckless" * * * the court concludes that it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party."

**{¶37}** The trial court also stated "…if this were a case of ordinary negligence … to be proven by a preponderance of the evidence summary judgment would not be."

**{¶38}** Appellant herein argues that the trial court erred by entering summary judgment in favor of the Defendants-appellees claiming that issues of fact exist that should be resolved by a jury. Appellant argues that the trial court's finding that it proved its case by a preponderance of the evidence precludes summary judgment and that it was error for the trial court to factor the trial standard of clear and convincing evidence into its decision to grant Appellees' motion for summary judgment.

### Burden of Proof at Trial

**{¶39}** A court should enter summary judgment on a claim if the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

**{¶40}** Appellees rely on *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, for the proposition when reviewing summary

judgment, a trial court must view the evidence in light of the substantive evidentiary burden applicable at trial.

**{¶41}** In *Myocare*, *supra*, the Ohio Supreme Court held:

**{¶42}** "Summary judgment may not be granted if there is any genuine issue of material fact. Civ.R. 56(C). However, in determining whether a genuine issue exists as to a material fact, a court of appeals must determine whether the evidence presented a "sufficient disagreement to require submission to a jury' or [is] 'so one-sided that one party must prevail as a matter of law.' " *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251– 252, 106 S.Ct. 2505, 91 L.Ed.2d 202. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.*, 477 U.S. at 254, 106 S.Ct. 2505, 91 L.Ed.2d 202. Accordingly, in determining whether a triable issue of fact exists so as to preclude summary judgment, a court should determine whether a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial. Only then does a *genuine* issue of material fact precluding summary judgment exist."

**{¶43}** Based on the foregoing, we find that the trial court did not err in considering the "clear and convincing" burden of proof at trial.

## Trial Court's Findings of Fact

**{¶44}** Appellate courts review grants of summary judgment de novo. *Sogg v. Zurz,* 121 Ohio St.3d 449, 2009-Ohio-1526, ¶ 5 (Citation omitted). We will now consider the evidence with respect to each claim.

## Medicare/Medicaid accreditation

**{¶45}** Appellant argues that the trial court erred in finding that Appellees' believed the new hospital project was necessary for the Hospital to keep its federal Medicare/Medicaid accreditation.

**{¶46}** Appellant argues that the record reflects the Hospital was in full compliance with the requirements of the JCAHO prior to approval of the capital project and, therefore, accreditation could not have been a motivating factor.

**{¶47}** Upon review, we find such argument unpersuasive as continued compliance and retention of JCAHO accreditation would certainly always be a motivating factor in all of the Board's decisions.

## Losing Money in 2007

**{¶48}** Appellant also argues that the trial court erred in finding that Appellees did not have any evidence before them that the Hospital was losing money in 2007.

**{¶49}** In its Judgment Entry, the trial court adopted "the factual recitations contained in the affidavits of [Appellees] and the exhibits submitted with them, to the extent that they are in compliance with Civ.R. 56(E)."

**{¶50}** Said Affidavits contained the following statement:

**{¶51}** "Kozel attempts to paint Twin City Hospital's financial condition as irreparably bleak in the summer of 2007. However, the information before the Board

Members at the time the Bond Transaction was entered into painted an entirely different picture. Twin City Hospital had net operating income for 2005, thus there was no evidence of the "negative trend" claimed by Kozel." (Aff. at 10).

{¶52} The trial court, in its own findings, stated that in 2005, Twin City had a net operating income of $24,870 but that the operating income fell to negative $407,216 in 2006, continuing to negative $795,000 in 2007. We therefore do not find that the trial court held as one of its findings that the Board had no evidence before it that the hospital was losing money

### Inaccurate Financial Information

{¶53} Lastly, Appellant argues that the trial court erred in finding Appellees were unaware of any inaccurate financial information.

{¶54} Again, Appellant cites to a statement contained in the Affidavits, which reads:

{¶55} "The Board Members are unaware of any information management of Twin City Hospital provided to A&F for use in their feasibility study that was inaccurate, misleading, or otherwise false." (Aff. at 8).

{¶56} Upon review, this Court finds that Appellant has presented no evidence that Appellees knew that any of the studies, plans or projections in this case were fraudulent.

{¶57} Carnegie Consulting advised Appellees that the "average trend is a 20% increase in volume after opening new construction". Further, the feasibility study prepared by Arnett & Foster PLLC indicated that "sufficient funds could be generated to

meet [Twin City] operating expense, working capital needs, and other financial requirements including debt service requirements …"

**{¶58}** Additionally, the Audit in this case found:

**{¶59}** "In our opinion, the consolidated financial statements referred to above presented fairly, in all material respects, the financial position of Twin City Hospital … in conformity with accounting principles generally accepted in the United States of America."

**{¶60}** Appellant was required to present sufficient evidence that members of the Board consciously disregarded the risk that approval of the capital project in this matter would result in injury/damage to the hospital. Upon review, we find Appellant failed to satisfy this burden.

**{¶61}** Appellant has failed to demonstrate a genuine issue of material fact that would require submitting any of his claims to a jury. Appellant's Assignments of Error are overruled.

**{¶62}** For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.

By: Wise, J.

Farmer, J., concurs.

Hoffman, P. J., concurs in part and dissents in part.

JWW/d 1008

*Hoffman, P.J., concurring in part and dissenting in part*

{¶63} I concur in the majority's disposition of Appellant's first assignment of error. I do so reluctantly because I believe *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 2003-Ohio-2287, is so significantly different in both the nature of the underlying proceedings and the evidentiary issue presented that its application herein runs contra to the plain language of Civ.R. 56.

{¶64} *Myocare* involved an action for declaratory judgment and injunctive relief regarding the validity of a close corporation agreement. Crucial to the court's opinion was the fact the close corporation agreement was a contract, or other written instrument, regular on its face with no indications of erasure or falsity; therefore, was rebuttably presumed to be correctly dated. The court stated where a rebuttable presumption exists, the party challenging the presumed fact must produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. The court found the evidence offered to rebut the presumption reflected little more than unfounded suspicion and personal vendetta, rising only to the level of speculation and innuendo.

{¶65} This case does not involve a declaratory judgment/permanent injunction action, but rather a complaint for monetary damages. And, it does not involve an evidentiary presumption.

{¶66} Nonetheless, I must concede the Ohio Supreme Court stated in *Myocare* in summary judgment proceedings, a court should determine whether a reasonable jury could find the evidence satisfies the evidentiary standards required at trial. I urge the Ohio Supreme Court to reconsider that holding for the following reasons.

{¶67} The issue presented in *Myocare* did not require an analysis of the overall requisite burden of proof at trial, but rather focused on the lack of evidence to rebut an evidentiary presumption of fact. To that extent, it can be argued application of its holding extending to the overall requisite burden of proof at trial was not necessary and dicta.

{¶68} Civ.R. 56(C) provides summary judgment shall be rendered if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. The rule does not address, let alone require, consideration of the requisite burden of proof at trial. The focus is upon whether the evidence, construed most strongly in the non-movant's favor, demonstrates a genuine dispute of material fact. The *Myocare* Court found the disputed fact (the date of the close corporation agreement) was not "genuine" in light of the evidentiary presumption regarding the validity of a writing, not because of a heightened burden of proof as to the underlying action.

{¶69} To consider the overall requisite burden of proof at trial necessarily involves a weighing of the evidence, inherently recognizing a disputed material fact exists. I believe to do so improperly usurps the role of the jury. The trial court's role is not to try the issue of fact,[1] but to determine whether triable issues of fact exist. *Viock v. Stowe-Woodard, Co.* (1983) 13 Ohio App. 3d 7, 15. The nonmoving party has no burden of proof in overcoming a summary judgment motion regardless of that party's

---

[1] That such happened it this case appears evident from the trial court's statement, "If this were a case of ordinary negligence … to be proven by a preponderance of the evidence, summary judgment would not lie. However, this is not such a case." Nov. 15, 2013 Judgment Entry at 16. The difference between negligence and reckless conduct is ordinarily left for the trier-of-fact to determine at trial.

burden of proof at trial. *Whiteleather v. Yosowitz* (1983), 10 Ohio App. 3d 272, 275. As such, I find consideration of the requisite standard of proof at trial goes beyond the plain reading of the rule.

{¶70} I note this Court has previously addressed this issue. In *Franklin v. Massillon Homes II, L.L.C.,* Stark App. No. 08–CA–288, 2009-Ohio-5487, 2009 WL 3321007, ¶ 34, this Court found the trial court erred in granting summary judgment based upon a determination the plaintiff had not established her claim for adverse possession because she had not satisfied the burden of proof necessary to succeed at trial. We held, "Civ.R. 56 merely requires that the trial court determine whether there are any genuine issues of material fact to be tried, not whether one party or the other will satisfy its burden of proof when the case eventually comes to trial." *Id.*

{¶71} While I concur in the majority's disposition of Appellant's first assignment of error as stated supra, I respectfully dissent from its disposition of Appellant's remaining assignments of error.

{¶72} Unlike the majority, I find when construing all the evidence in the record most strongly in favor of Appellant, reasonable minds could differ as to whether Appellees were reckless in their responsibilities regarding issuance of the bonds to finance the hospital building project. I do not find the evidence "so one-sided that one party must prevail as a matter of law." *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251-252.